By the Coubt.
Boswoeth, J.
The charge of the Judge who presided at the trial, is not contained in the ease made. We must, therefore assume, that it was in all respects correct, and that there was nothing in it, of which the appellant can justly complain.
*106 The appellant contends, that in order to impeach the bona fides of the sale to Peter H. ¡Schenck, it must appear, that at the time of the transfer to him, he had notice of such specific frauds practised by Courtney Schenck & Brother, as would be sufficient to avoid the sale, as betweep. them and the' plaintiffs.-
We do not understand that to be the rule. It is enough that he had notice of such facts and circumstances as would have led a man of ordinary care and caution to suspect, that they did not get possession of the goods by honest means. If he'had such notice, it was- his duty to inquire; If,- having such notice, he did not choose to inquire, his condition is no better than if he had inquired and obtained knowledge of such facts, as proper inquiries would have furnished.
This is the rule with respect to an endorsee of negotiable paper, obtained from the maker by fraud. There are no considerations of public policy, which would give to a purchaser of chattels from a fraudulent vendee, greater immunity, than would be ¡extended to an endorser of negotiable paper. (Chitty on Bills, 279-282. Pringle v. Phillips & Nesi, 5 Sand. S. C. R. 157.)
The evidence shows clearly, that P. H. Schenck was informed, before the sale was made, that his sons had applied to the plaintiffs to purchase on a credit of eight or-nine months, representing that they were very good. His own answer to the letter the plaintiffs wrote' him, informed them that Courtney Schenck & Brother had been started in business with a very handsome capital, and did not bring to their knowledge the fact, that they then owed him $12,600. He knew, at the time of the transfer, .that in about eleven weeks after the letter written by himself, they had failed, owing about $70,000. He knew at that .time that they owed him enough to exhaust their whole estate. He knew that in nearly every week, between this sale and- the transfer to himself, they had been borrowers of him, refunding nothing. It is difficult to resist the conclusion, that he inquired and learned the cause of this rapid succession of pecuniary wants. If he had not done so, he- could not well have failed to learn before . the transfer to. himself,, that Courtney Schenck & Brother, when they applied .to the plaintiffs to purchase from them on credit, instead of being in a very good, .were in a very bad condition, and must have so known at the time. He knew that whatever the repre *107 sentations were which had been made to the plaintiffs, they desired further assurance as to the means of his sons before trusting them, and had written to him as a person who could probably give the desired information. Such a letter, followed by immediate and continued applications from his sons, for loans of money, would naturally have led him to ascertain their condition. We do not feel at liberty to say, the jury were not authorized in finding, on the evidence submitted to them, that he had notice at the time of the transfer to himself, of such facts and circumstances as would naturally lead him to the conclusion, that Courtney Schenck & Brother obtained possession of the goods by a fraudulent misrepresentation or concealment of their pecuniary condition. The testimony of Willetts, if credited, was open to the construction, and in connection with the other evidence, would justify the conclusion, that he did not consider, at the time he wrote his letter of the 5th of August, 1851, that their circumstances were very prosperous. As the case is presented to us, we cannot say that the evidence does not warrant the verdict rendered by the jury.
The motion for a new trial was properly denied, and the order appealed from must be affirmed.